RECEIVED
IN ALEXANDRIA, LA
SEP 2 3 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JAMES VEAL (#264130)                DOCKET NO. 10-CV-1013; SEC. P

VERSUS                              JUDGE TRIMBLE

WARDEN TIM WILKINSON, ET AL.        MAGISTRATE JUDGE KIRK

### REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint (42 U.S.C. §1983) of James Veal, filed pro se and *in forma pauperis* on June 10, 2010, and amended on August 18, 2010. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at Winn Correctional Center (WNC) in Winnfield, Louisiana. Plaintiff names as defendants Dr. Itchwood (his treating physician at the LSU hospital in Shreveport), Warden Wilkinson, Warden Stevenson, Pat Thomas, Ms. Richerson, Dr. Pacheco and Dr. Cleveland. He complains that he was denied adequate medical care by Dr. Itchwood and by the medical staff at WNC. He seeks injunctive relief in the form of immediate medical treatment for his feet, treatment of his diabetes, and compensatory damages.

### *Plaintiff's Allegations*

Plaintiff alleges the following:

- Plaintiff arrived at WNC on January 4, 2010, at which time he informed Nurse Practitioner Richerson of his diabetes and foot problems; she said that she would schedule Plaintiff to see a podiatrist;

- On March 25, 2010, Plaintiff was transported to the LSU medical center in Shreveport, Louisiana. He told the

doctor that he had callouses, corns, bunions, and cracked heels. The physician "dangerously and recklessly performed a type of surgery" to Plaintiff's right toe, which caused "severe bleeding". The doctor covered the wound with gauze. The doctor said that he would order cream for Plaintiff's cracked heels.

- Plaintiff informed Pat Thomas of what happened at the hospital, and she had Dr. Pacheco examine Plaintiff's toe. Dr. Pacheco removed the gauze, cleaned the wound, and re-wrapped it.

- Plaintiff was not scheduled for any follow up treatment.

- On March 26, 2010, Plaintiff "wrote a request" to Pat Thomas about his pain, but she never responded. So, Plaintiff "kept writing her." Pat Thomas responded to Plaintiff on June 2, 2010.

- Plaintiff complained to Warden Stevenson, who escorted Plaintiff to the infirmary. Stevenson spoke with someone in the medical office and then told Plaintiff to get lotion out of the canteen for his cracked feet.

- At one time Plaintiff was provided a prescription cream for his feet, but the medical department would not refill the prescription.

- Plaintiff is "having serious problems with [his] diabetes, feet, knees, shoulder, wrist, etc."

- Nurse Practitioner refused to put a "sliding scale or finger stick monitor" to check Plaintiff's sugar.

- On May 6, 2010, Plaintiff was examined by WNC's new physician, Dr. Cleveland. Cleveland examined Plaintiff's feet and said that he was not going to do anything for Plaintiff's feet "because he's not a foot doctor."

- On May 29, 2010, Dr. Cleveland wrote Plaintiff a duty status allowing Plaintiff to wear slippers. He also changed Plaintiff's pain medication.

- Warden Wilkinson will not buy Plaintiff orthopedic shoes or allow Plaintiff's mother send orthopedic shoes. Instead of getting him special shoes, the medical staff gave Plaintiff a duty status to wear "shower slippers".

- On August 16, 2010, Plaintiff was sent to "LSU foot clinic," where he was examined by three medical students instead of a podiatrist.

### *Law and Analysis*

#### I.   Pat Thomas and Warden Wilkinson

Plaintiff complains that Pat Thomas violated his rights under the Eighth and Fourteenth amendments by willfully refusing to respond to Plaintiff's request forms and by failing to provide adequate medical treatment.   He complains that Thomas told Plaintiff that the proper procedure was to put his requests on a sick-call form rather than investigating or resolving his complaints.   Plaintiff does not have a federally protected liberty interest in having his requests or grievances addressed and resolved to his satisfaction.   A purported constitutional violation arising from the alleged failure to investigate or resolve a Plaintiff's request or complaint is meritless.   See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff also complains that Thomas and Wilkinson will not send him to New Orleans to see a podiatrist at Charity Hospital. This does not amount to deliberate indifference on the part of Pat Thomas or Warden Wilkinson.   The fact that Plaintiff may not be examined by the doctor of his choice, specifically, a podiatrist in New Orleans, does not mean that officials were unconstitutionally deliberately indifferent to his serious medical needs.   In fact, that the medical care given is not the best that money can buy does

3

not amount to deliberate indifference. <u>Mayweather v. Foti</u>, 958 F.2d
91 (5th Cir. 1992); <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th
Cir. 1997).

## II.  Dr. Itchwood

Plaintiff names as a defendant his treating physician at
Louisiana State University hospital who operated on Plaintiff's
toe.  First, it is unclear whether or not Dr. Itchwood is a state
actor.  Assuming for the purpose of this Report and Recommendation
that Dr. Itchwood is a state actor, Plaintiff has failed to present
non-conclusory allegations that Dr. Itchwood acted with deliberate
indifference.   The Fifth Circuit has held that deliberate
indifference in the context of a failure to provide reasonable
medical care means that: 1) the official was aware of facts from
which an inference of substantial risk of serious harm could be
drawn; 2) the official actually drew that inference; and 3) the
official's response indicates that he *subjectively intended* that
harm occur. <u>See</u> <u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447,
458-459 (5th Cir. 1998)(citation omitted); <u>see also</u> Easter, 467
F.3d at 463; <u>Domino v. Tex. Dept. of Criminal Justice</u>, 239 F.3d
752, 756 (5th Cir. 2001).  An official's knowledge of a serious
risk of harm may only be inferred if the risk was obvious; it may
not be inferred from a "*negligent ... response to a substantial
risk of serious harm.*" <u>Thompson</u>, 245 F.3d at 459 (emphasis
added)(citing <u>Hare</u>, 74 F.3d at 645).

4

According to Plaintiff, Dr. Itchwood was performing a type of surgery on Plaintiff's right toe, which caused "severe bleeding." He claims that Dr. Itchwood did not "finish his job to my feet." This resulted in "a big knot called a callus" under his left foot. [Doc. #5] Plaintiff is not pleased with the treatment he received, but he presents allegations of negligence, at best, which is insufficient to support a claim under §1983. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996); Jackson v. Procunier, 789 F.2d 307, 310 (5th Cir. 1986)(citing Davidson v. Cannon, 474 U.S. 344 (1986); Daniels v. Williams, 474 U.S. 327 (1986)).

### III. Warden Stevenson

Plaintiff alleges that he told Warden Stevenson about his foot problem, so Warden Stevenson walked with Plaintiff to the infirmary. Stevenson spoke with someone in the medical office, and then told Plaintiff to purchase lotion out of the canteen for his cracked feet. Warden Stevenson is a physician and cannot treat Plaintiff's complaints or prescribe medication. Stevenson clearly investigated Plaintiff's complaint in person. That Plaintiff was not satisfied with the outcome does not mean that Warden Stevenson acted with deliberate indifference to Plaintiff's health or safety. There are no allegations that Stevenson subjectively intended for Plaintiff to be harmed.

5

## IV.  Dr. Pacheco

Plaintiff alleges that former Winn Correctional physician Dr. Pacheco intentionally denied Plaintiff of medical care.  However, Plaintiff admits that within two days of his arrival at Winn Correctional, Dr. Pacheco provided him with a knee brace, cocoa butter lotion, and antifungal cream.  Dr. Pacheco also continued Plaintiff's glucophage tabs; Lopid; Vosotec Tabs; INH Tabs; Vitamin B6; Ecotrin; Elavil; and Humulin N U-100 Susp.  The only medication that Dr. Pacheco discontinued was HCTZ (hydrochlorothiazide) - a water pill.

Plaintiff claims that when he returned from surgery at LSU hospital, Dr. Pacheco refused to give him medication for pain or infection.  However, in his original complaint, Plaintiff admits that Dr. Pacheco examined him post-surgery, unwrapped the toe, examined it, cleaned the incision site, and re-wrapped it with fresh gauze.  He also gave Plaintiff a pass to wear slippers. Plaintiff does not present allegations of deliberate indifference to medical needs by Dr. Pacheco.

## V.  Dr. Cleveland and Nurse Practitioner Richerson

Plaintiff complains that the nurse practitioner, Richerson, and the current physician at Winn, Dr. Cleveland, denied him medical care by refusing to call him out for sick call, by refusing to refill his prescription foot creams, and by not cutting his toenails.  Plaintiff also complains that Cleveland and Richerson

6

have refused to monitor his blood sugar despite the fact that he is a diabetic. Plaintiff alleges that he is required to inject himself with fifty units of insulin twice a day without first testing his blood sugar. Thus, service of process will be ordered on Cleveland and Richerson.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claims against **ONLY** the following Defendants be dismissed: **Dr. Itchwood, Warden Wilkinson, Warden Stevenson, Pat Thomas,** and **Dr. Pacheco.** Service of process is being ordered on Nurse Practitioner Richerson and Dr. Cleveland in a separate order.

**Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking**

either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.   <u>See</u> <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed at Alexandria, Louisiana, this 23rd day of September, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE